And at this time, we'll hear Quadir versus the New York State Department of Labor. Thank you. Good morning. Good morning, Your Honor. As you guys know, I'm a pro se litigant. I'm representing myself on my own behalf. And as such, I will be presenting to the court factual arguments as to why I believe the district court's decision in my case was wrong. Obviously, because I'm a pro se litigant, I'm not going to make legal arguments to you because I'm- We have your briefs. Okay, okay. This is your opportunity to nail home whatever you think works. So, what I wanted to say, sir, is that I've been dealing with this medical condition for the last five, six years now. Before, my symptoms were worse. Now, they've gotten a little bit better, but I still have a lot of the symptoms. I very first time I submitted my first medical note to the Labor Department was on January 28, 2011. That was the first time. And that particular medical note informed the Labor Department from day one that I was specifically requesting an exemption from public speaking assignments due to my illness. That's not because I'm afraid to do public speaking. It's not, I used to be a teacher. I even taught workshops in the DOL for two years and four months. And I have prior experience doing public speaking when I was a college student. Public speaking assignments for at least two weeks while I am undergoing medical treatment. The department knew this. Second medical note I submitted was on February 11th, I believe. That was about my chronic lightheadedness. Once again, I made it exceptionally clear to the Labor Department, all relevant officials, look, I'm seeking the same accommodation that I'm requested moments, two weeks prior, which is to be exempt from public speaking assignments or workshop teaching duties. The Bronx DOL supervisors, for the first two accommodation requests, for the first two months, approved my accommodation request without involving their main office in Albany, New York called the DI office, Division of Equal Employment Division or something of that sort. After the first two months, I immediately faced resistance from my supervisors, especially my immediate supervisor, Ms. Cynthia Maggett. I was seeking at that time in April, I submitted a medical note very specifically stating, the neurologist wrote in the note that Mr. Kadir is being treated for medical issues. Please exempt him from all prolonged standing work duties. Along with that request, in April, April 11, 2011, sometime around there, I also submitted an actual brief explaining to the Department of Labor very specifically what kind of an exemption I was requesting. Once again, I'm requesting to be exempt from teaching assignments or public speaking assignments due to the illness that I was facing and due to some of the symptoms I had. The Department of Labor asked me to submit to them a more clarifying medical note, because the April 2011 medical note stated, exempt Muhammad Kadir from having to teach. The April one said, exempt him from having to do prolonged standing work because of medical issues. So the department felt my note was very vague or unclear because it just said medical issues. It didn't explain what the medical issues were. So I got them a second medical note which stated some of the symptoms I was experiencing. Headaches, vertigo, difficulty concentrating, that's the May 27th medical note. Based on that, they approved my accommodation after I submitted to them the updated medical note. Then, a couple of months down the road, that medical note expired, and I submitted to them a fifth medical note. This fifth medical note, which is the August 15th medical note, stated that I was experiencing headaches, vertigo, difficulty concentrating, fatigue, and I was being seen by a psychiatrist and a neurologist. Based on that, they approved my accommodation request for an extension. Even though during this time, my immediate supervisor was giving me an extraordinarily difficult time just to get my accommodations approved. She demanded that I submit the medical note and get the approval by before the end of August, even though the gentleman, Mr. Cobanz, who's part of the DI office- But you got the accommodation. I got the accommodation, correct sir, even though they gave me a hard time. Then finally, close to a year later, in December of 2011, I got the most extensive medical note, which is please exempt Muhammad Qadir because he's been diagnosed with major depressive disorder. Please exempt him from all prolonged standing work duties or any other activity requiring considerable physical exertion. From that point on, were you assigned to do any public speaking? No, I was not from that point on. However, the Bronx DOA supervisors repeatedly kept stating to me that teaching is an essential function of the LSR job. And they even pressured me to do teaching assignments in October of 2012. Thank you. We'll hear the other side. Okay. May it please the court, Mark Sean for the State Department of Labor. Your honors, the district court properly granted a summary judgment to the department. First, because the department reasonably accommodated Mr. Qadir's medically documented disability. And second, because the department did not retaliate against Mr. Qadir for challenging its accommodation decision. Unless the court has any questions, we would ask simply that you affirm. So one of the items that the district court mentioned was Mr. Qadir's failure to provide any evidence that he had submitted various medical notes in 2012. Is that correct? Not quite, your honor. The, I believe what your honor is referring to is the district court said, with respect to the very first note that was limited to two weeks, a two week exemption period, that that note had not been put before the court at summary judgment. If you, and we discussed this in our brief. What he says is, Qadir, this is page eight of the opinion, Qadir has failed to offer evidence showing any nexus between his desired accommodation and his documented needs. For instance, Qadir has not offered evidence that he submitted a January 28, 2011 note. And there's more language to the effect that he failed to submit evidence of having submitted medical notes. Yes, your honor, that's correct. Because at summary judgment, that note was not in the record, was not in the summary judgment record. It was not attached to any of the summary judgment filings. It was not identified in its location in the record, which was, as we say, quite voluminous, was not located. Was there not a declaration from Mr. Qadir that referenced those notes? At most, your honor, the sir reply declaration referenced the note. But again, it was still not attached. But I think even- Is there also not an email that was part of the summary judgment record from Mr. Sheffy to Mr. Qadir, thanking him for the doctor's notes on the dates that the district court said there was no evidence of evidence? I'm sorry, we may be talking about two different sets of notes then. I took your honor to be referring to the January 2011 note that was from Dr. Sinwani. If you were, so the notes I believe that Mr. Sheffy was referring to were notes from Dr. Iqbal that were produced after the accommodation decision that's at issue in this case, from April and August of 2012. 2012, that's correct. Yes. And there was no evidence that those had been, well, those were not submitted to the department prior to its accommodation decision. They couldn't have been, because they were generated after it. January 2011 note was, there is a declaration that, and correct me if I'm misunderstanding the record, but that says that in which he declares that he submitted that note to the department. Yes, yes, your honor. And that does refer to concentration issues. Yes, several of the notes refer to concentration issues. That first note, to be clear, that first note asks for an exemption from teaching duties of all sorts, expressly only for a two week period to permit testing. Thereafter, there were several notes that referenced concentration issues. Each of those notes, however, indicated that the concentration issues that they were discussing could be fully addressed by exempting Mr. Kadir from prolonged standing work. Which is precisely what the department did. His response to that, and I appreciate what you're saying, but his response to that is that there was always the risk. There was not a formal exemption, there was a practical exemption. He was not asked to do anything where he would have to speak and so on, but as a theoretical matter, he could have been asked. Well, your honor- Is that correct? I don't believe that that is responsive to the point that I was making. Because what I was saying was that the accommodation that he was offered in February 2012 would have fully addressed the concentration issues. Because it would have allowed him to teach while sitting down rather than standing up. And his doctors had indicated that his need, his limitation was to avoid prolonged standing. And that the concentration issues that he had could be addressed by enabling him to avoid prolonged standing. Which the department accommodated by permitting him or offering him a means of teaching sitting down. Now there's the additional point that he never had to teach at all, which is what I take your honor to be referring to. But with respect to the concentration issues that your honors have referenced, the department's offered accommodation would have fully addressed what his doctor said was necessary. Could you explain to me why somebody who has trouble concentrating while standing up can concentrate while sitting down? Because the issues that were described in these notes related to various balance problems, lightheadedness, fatigue, all of which- Lightheadedness, I see what you're saying. Yes, are exacerbated by requiring someone basically standing up and teaching a class takes more effort than sitting down and teaching a class. And thus takes more energy and more concentration. Thank you. Thank you both. We will reserve decision.